DABBS *v.* TENNESSEE VALLEY AUTHORITY.

(*Nashville*, December Term, 1951.)

Opinion filed June 7, 1952.

WIGGS & HUMPHREYS, of Linden, and WALKER & HOOKER and TYREE B. HARRIS, all of Nashville, for plaintiff in error.

JOSEPH C. SWIDLER, CHARLES J. McCARTHY and THOMAS A. PEDERSEN, all of Knoxville, for defendant in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Plaintiff sued the Tennessee Valley Authority and Meriwether Lewis Electric Cooperative for alleged negligence causing the electrocution of her husband, Joe S. Dabbs. The Tennessee Valley Authority demurred to the declaration on various grounds four of which were sustained by the trial judge and an order entered sustaining these grounds of the demurrer. At the time this order was entered the plaintiff prayed an appeal to this Court but did not perfect the same at the time. Some months later a voluntary non-suit was taken as to the Meriwether Lewis Electric Cooperative. The order praying an appeal from the action of the judge in sustaining the demurrer of the Tennessee Valley Authority was amended so as to make the order effective at that date and this appeal comes from this second order. A motion is made here by the Tennessee Valley Authority to dismiss the appeal because not perfected in time. We pretermit any action on this motion because we have concluded that the demurrer which was sustained by the judge should be sustained by us, at least on one ground thereof. We will pretermit any discussion of other grounds.

The declaration is in four counts and alleges in substance that the TVA generates and sells electricity to the Meriwether Lewis Electric Cooperative which, in turn,

distributes the electricity to its various customers; that on October 22, 1949, one of the power lines, owned and operated and under the exclusive control of the Cooperative, broke and fell through the negligence of the Cooperative; that the resulting spark set the grass and brush on fire in the vicinity of property belonging to the State of Tennessee; that the deceased, Joe S. Dabbs, was an employee of the State and that in the exercise of his duties he went to the premises to put out the fire, but, without knowing that the line was down, stepped or tripped on it and was electrocuted. It is charged that the TVA sold electricity to the Cooperative and that the TVA was negligent in not cutting off the current it supplied to the Cooperative's system and in not maintaining an automatic switch in such a condition that it would cut off the current. There is no allegation that the TVA had knowledge or notice of the break in the Cooperative's line.

The only allegations of negligence of the Tennessee Valley Authority are: ''That the Tennessee Valley Authority maintained an automatic switch at or near Parsons, Tennessee, which was supposed to cut off the flow of electricity in the event a major power line broke at a point past where said electricity went through said switch. That the point of the aforesaid break in the power line was beyond the switch when that said switch was situated between the break and the point at which the said electricity was generated.

''That, as a result of the negligence and carelessness of the defendant, Tennessee Valley Authority in failing to maintain and keep said switch in proper state of repair, the switch did not cut off immediately following the break in the power line but continued to be open and let electricity pass through it for a period of at least an hour and

until it was manually pulled or cut off by the defendant or someone acting in its behalf.''

■ It is the general rule that where a company merely transmits its electric current from its lines to the consumer wires, which it did not install and does not control, that the company has no duty to inspect such wires and is not liable for injury caused by defects in them. *Gas & Electric Co.* v. *Speers,* 113 Tenn. 83, 81 S. W. 595; Annotation 134 A. L. R. 505-529.

■ This same principle is applicable where a generating company, which merely sells electric current to a distributing company, which in turn distributes such current to its customers, the generating company having no control over the wires and appliances of the distributing company is not liable for injuries or damages resulting from the condition of such wires and appliances. 134 A. L. R. 515.

■ But where the generating company knows of a defect in the lines of the distributing company it then becomes the duty of the generating company to stop and not to send its deadly current through the defective wiring of the distributing company. If it does not do so after knowledge or reasonable opportunity to learn of said break it is liable for injuries to persons or property caused by this breach of duty.

■ There is no allegation in this declaration that the ownership or control of these wires was under the TVA. The allegation is that the wires ''at the point aforesaid was under the exclusive control of the defendant Meriwether Lewis Electric Cooperative''. Thus we see a complete absence of an essential factor to hold the Tennessee Valley Authority, that is, ownership or control or notice. There is likewise no allegation that the Tennessee Valley

Authority assumed or should have assumed any duty of inspection and maintenance of the lines of the Cooperative. Such an allegation, or proof in the case of the trial, would have been necessary. But since the Tennessee Valley Authority did not assume this duty and had no notice of the defective condition of the wires of the Cooperative then it certainly would not be liable for sending its current into this defective wiring.

We have quoted above in full all the allegations of negligence that are contained in the declaration against the TVA. The declaration does not allege that the automatic switch at the Parsons sub-station was intended to protect the lines of the Cooperative; there is no allegation that TVA undertook to maintain that switch for the benefit of the Cooperative; there is no allegation that the Cooperative relied on the presence of the automatic switch. It certainly seems to us that in view of the demurrer, the action taken by the trial judge and the liberality of our courts in allowing amendments, that if the proper allegations could be made in these things last mentioned, that then able counsel for the plaintiff would have made such allegations. Thus in the absence of these allegations it seems a reasonable inference that the automatic switch was maintained by the TVA for the purpose of protecting its own lines and equipment and that it was never intended to operate in event of a break in the Cooperative's line. *White* v. *Nashville, C. & St. L. Railroad,* 108 Tenn. 739, 70 S. W. 1030.

Where no allegations of an existing duty are made it follows that a failure to act can impose no liability on the one who fails to act. We use the word "duty" in the sense of "legal duty". This term "legal duty" is defined as "that which the law requires to be done or forborne to a determinate person, or to the public

at large, and as correlative to a right vested in such determinate person or the public at large." Wharton Negligence, 2nd Edition, Sec. 24.

To hold the Tennessee Valley Authority liable under the allegations of this declaration would "Pressed to its legitimate conclusion, * * * would make an electric or a gas company an insurer against defects in appliances over which they had no control, and, to avoid liability, would impose upon them the duty of continued inspection of the wires and pipes of every customer supplied with their products. This would be a burden which no such company could bear and live; and it also would be a source of annoyance to its customers, which they would not long submit to." *Gas & Electric Co.* v. *Speers,* supra [113 Tenn. 83, at p. 88, 81 S. W. 597].

For the reasons above stated the trial court is affirmed with costs.